Linda J. Thayer, Esq. (SBN 195,115)
linda.thayer@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304-1203
Telephone:  (650) 849-6600
Facsimile:  (650) 849-6666

Barbara C. McCurdy, Esq. (*Not Yet Admitted ProHac Vice*)
barbara.mccurdy@finnegan.com
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

Attorneys for Plaintiff
INTERTRUST TECHNOLOGIES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTERTRUST TECHNOLOGIES CORPORATION.<br><br>Plaintiff,<br><br>v.<br><br>MACROVISION, INC.<br><br>Defendant. | CASE NO. C06-04598<br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Intertrust Technologies Corporation ("Intertrust") brings this action against Defendant Macrovision Corporation ("Macrovision") under 35 U.S.C. § 146 to remedy the decision and January 5, 2006 Amended Judgment ("the Amended Judgment") of the United States Patent and Trademark Office ("USPTO") Board of Patent Appeals and Interferences (the "Board") in Patent Interference No. 105,142 ("the '142 Interference"), entitled "Karl L. Ginter, Victor H. Shear,

**COMPLAINT**


Frances J. Spahn and David M. Van Wie, Junior Party v. Greg Benson, Gregory H. Urich and Christopher L. Knauft, Senior Party."

### THE PARTIES

1. Karl L. Ginter, Victor H. Shear, Frances J. Spahn and David M. Van Wie (collectively referred to herein as "Ginter") are named as the inventors of the subject matter claimed in claims 91-148 of United States Patent Application No. 09/411,205, filed February 13, 1995 (the "Ginter '205 application") and have assigned all rights in the Ginter '205 application to Plaintiff Intertrust. Intertrust is therefore the legal owner of the '205 application and all inventions disclosed and claimed therein, and is the real Plaintiff party of interest for the purposes of this action.

2. Plaintiff Intertrust is a California corporation with a principal place of business at 955 Stewart Drive, Sunnyvale, CA 94085.

3. Defendant Macrovision is, on information and belief, a California corporation with its principal place of business at 2830 De La Cruz Boulevard, Santa Clara, CA 95050.

4. Greg Benson, Gregory H. Urich, and Christopher L. Knauft (collectively referred to herein as "Benson") are named as the inventors of the subject matter claimed in claims 1-29 of United States Patent No. 5,845,281 ("Benson I"), claims 30-69 of United States Patent Application No. 09/164,606 ("Benson II"), and claims 1-53 of United States Patent Application No. 09/321,386 ("Benson III"). On information and belief, Benson has assigned all rights in Benson I, II, and III to Defendant Macrovision. On information and belief, Macrovision is therefore the legal owner of Benson I, II, and II and is the real Defendant party of interest for the purposes of this action.

### JURISDICTION AND VENUE

5. Plaintiff brings this civil action under the Patent Laws, Title 35 of the United States Code, and under 28 U.S.C. § 146. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a).

6. Venue is proper in this court under 28 U.S.C. § 1391(d).

**INTRADISTRICT ASSIGNMENT**

7. The San Jose Division of the Northern District of California is the proper division to hear this matter because both Plaintiff and Defendant reside and do business in the San Jose division.

**FACTS GIVING RISE TO THE COMPLAINT**

**The Parties and Decision Below**

8. On September 4, 2003, the USPTO declared the '142 Interference under 35 U.S.C. § 135(a) between the Ginter '205 application and Benson I, II, and III to determine priority of invention as between the parties Ginter and Benson since the parties were claiming the same or substantially the same invention.

9. The Ginter '205 application was filed in the USPTO on October 4, 1999, and was accorded an effective filing date under 35 U.S.C. § 120 of February 13, 1995, the filing date of its parent United States Application No. 08/388,107.

10. Benson I, II, and III are based on an application filed in the USPTO on January 31, 1996, that is, later than Ginter's effective filing date. However, Benson claimed entitlement to and was accorded benefit under 35 U.S.C. § 119 of Swedish Application 9500355-4 filed February 1, 1995 ("Benson's benefit date").

11. Because Benson was accorded the earlier effective filing date, it was accorded "senior party" status and Ginter "junior party" status. Ginter introduced evidence to show, *inter alia*, (1) that Benson committed inequitable conduct in the procurement of Benson I, and in the prosecution of Benson II and III, and thus had unclean hands in prosecuting the interference and (2) that Ginter actually conceived and made the invention at issue in the '142 Interference prior to Benson's effective filing date.

12. On January 5, 2006, the Board issued the Amended Judgment that is the subject of review in this action, in which it correctly ruled against Macrovision (Benson) on priority of invention on its finding that Benson committed inequitable conduct in the procurement of the Benson patent and applications, but erroneously and inconsistently also entered judgment against Ginter on priority on the ground that Benson was first to invent the subject matter at issue.

**The Subject Matter of the '142 Interference**

13. The subject matter of the '142 Interference relates to methods of managing electronic data and is defined in "Counts" 1, 2 and 4 which are identical to claims of the Benson III application.

14. Count 1 reads as follows:

A method of managing a data object so as to comply with control conditions for usage of the data object, comprising:

storing a data object in the memory of a data object provider processor;

providing a variable number of control conditions for usage of the data object;

providing a general set of control data for the data object based on the variable number of control conditions for usage, the general set of control data comprising at least one or more usage control elements defining usages of the data object which comply with the variable number of control conditions; and

encrypting at least the data object to create a secure data package so that it is ready to transfer to a user data processor.

15. Count 2 reads as follows:

The method of Claim 1, wherein providing the general set of control data includes providing a security control element which identifies a security process to be applied before usage of the data object is allowed.

16. Count 4 reads as follows:

A method of controlling a usage by a user of a data object so as to comply with a variable number of conditions for usage of the data object, comprising:

providing at least one data package, the data package comprising a data object and a first control set, the first control set comprising at least one usage control element defining a usage of the data object which complies with the variable number of conditions, the data object being encrypted;

providing a second control set;

performing an electronic negotiation between the first control set and the second control set; and

performing an action being specified in the first and second control sets, based on a result of the electronic negotiation.

**The Board's Finding of Inequitable Conduct by Benson**

17. During the '142 Interference, Ginter filed "Preliminary Motion No. 1 (For Judgment Based on Inequitable Conduct)" on March 1, 2004, alleging that Benson had committed inequitable conduct by intentionally not disclosing material information to the USPTO.

18. Pursuant to Board procedures, Ginter's Preliminary Motion 1 was initially dismissed (Paper No. 153) on September 27, 2004, without prejudice, the Board concurrently authorizing Ginter to take live testimony of Benson's witnesses in December 2004 and to refile its Preliminary Motion 1 in January 2005 if Ginter continued to assert inequitable conduct by Benson. Ginter did so, and on September 13, 2005, the Board sustained Ginter's motion. Decision on Inequitable Conduct, mailed September 13, 2005, Paper No. 305, ("Decision on Inequitable Conduct").

19. The Board determined that highly material information was withheld by Benson in violation of 37 CFR 1.56, that Ginter had proved that Benson withheld the information with the intent to deceive the USPTO, and Ginter had therefore shown by clear and convincing evidence that Benson committed inequitable conduct before the USPTO in obtaining the Benson I, II and III patents. Decision on Inequitable Conduct, p. 42.

**The Board's Decision on Ginter's Case for an Earlier Date of Invention**

20. On December 28, 2005, the Board issued a decision limiting Benson to its February 1, 1995, effective filing date for each of Counts 1, 2, 4. Decision on Priority, Paper No. 319 ("Decision on Priority"), p. 39.

21. In the Decision on Priority, the Board correctly ruled that Ginter had proved conception of the subject matter of Counts 1, 2, and 4 prior to Benson's effective filing date. However, the Board erroneously ruled, *inter alia*, that Ginter was not entitled to judgment of priority of invention because Ginter had not proved reasonable diligence during the "critical period" running from just before Benson's February 1, 1995, benefit date to Ginter's February 13, 1995, U.S. filing date, and had not established proof of an actual reduction to practice prior to Benson's filing date of February 1, 1995. Decision on Priority, p. 144.

22.  The Decision on Priority does not mention or refer to the Decision on Inequitable Conduct that had been rendered three months earlier.

**The Board's Entry of An Appealable USPTO Decision**

23.  On the same day as it issued the Decision on Priority, the Board also issued a Final Judgment under Board Rule 127, erroneously ordering that judgment on the issue of priority be entered against the party Ginter as to each of Counts 1, 2, and 4.  Judgment - Bd. Rule 127, Paper No. 320, mailed December 28, 2005 ("Final Judgment"), p. 1.

24.  The Final Judgment did not enter judgment against Benson based on inequitable conduct as was required by the Board's Decision on Inequitable Conduct issued on September 13, 2005.

25.  On January 5, 2006, the Board withdrew the Final Judgment dated December 28, 2005, and replaced it with an Amended Judgment in which it properly entered judgment against Benson on all counts in light of its prior finding of inequitable conduct by Benson, but erroneously also entered judgment against Ginter on priority on all counts.

26.  On February 6, 2006, Ginter timely filed a Request for Rehearing under 37 C.F.R. § 41.127 ("Ginter's Request") requesting rehearing and modification of the Amended Judgment, of the entry of judgment against Ginter and Ginter's claims corresponding to Counts 1, 2, and 4, and of the related Final Judgment of December 28, 2005.

27.  On May 31, 2006, a Board panel consisting of three Administrative Patent Judges erroneously dismissed Ginter's Request on the basis that it was not timely filed and, alternatively, denied the Request on the merits.  Decision - Rehearing - Bd. R. 127(d).  One of the Administrative Patent Judges (Judge Martin) concurred with the majority to dismiss the Request as untimely, but disagreed with the entry of judgment on priority against Ginter in light of Benson's inequitable conduct and unclean hands.

28.  This appeal is being timely filed within two months after the date of the Board's decision on Ginter's Request for Rehearing per 37 C.F.R. § 1.304 and 35 U.S.C. § 146.

**Macrovision's Knowing Assertion of Claims Procured Inequitably**

29. The Board found that Benson committed inequitable conduct by violating the duty of disclosure by failing to disclose the CITED report to the USPTO during the course of prosecution of Benson I, which issued on December 1, 1998, in violation of 37 CFR 1.56.

30. Upon information and belief, Macrovision purchased Benson I, II, and III from inventor Greg Benson's then-company, MediaDNA, in 2001. Therefore, Macrovision knew or should have known about the facts underlying the unenforceability of Benson I and unpatentability of Benson II and III as early as 2001.

31. Nonetheless, when the USPTO initiated the '142 Interference in 2003, Macrovision (Benson) made a deliberate decision to pursue the interference to the detriment of Intertrust (Ginter). In pursuing the interference, Macrovision sought to interfere with, delay and/or prevent Intertrust from rightfully obtaining a patent on the Ginter '205 application.

32. Participation in the interference and assertion of its right to a patent on the subject matter claimed in the '205 application has delayed issuance of such a patent. It also has forced Intertrust to undertake substantial expense in attorney fees and other costs. Those expenses continue with this review action under 35 U.S.C. § 146 necessitated by the Board's erroneous decision on priority of invention and by Macrovision's continued assertion of its Benson I, II and III patent and patent applications.

33. Because of the inequitable conduct committed in connection with procuring the Benson I patent as well as in prosecuting the Benson II and III patent applications, Benson and Macrovision went into the '142 Interference with unenforceable claims and unclean hands. Benson and Macrovision knew or should have known of the inequitable conduct committed in connection with the Benson I, II and III patent and applications. Benson and Macrovision knew or should have known that they were not entitled to pursue the interference with unclean hands due to inequitable conduct.

34. In view of the inequitable conduct committed in connection with procuring the Benson I patent as well as in prosecuting the Benson II and III patent applications, Benson and Macrovision should have immediately terminated the interference upon its declaration by the

USPTO. The USPTO Rules provide parties the right to file a simple Request for Entry of Adverse Judgment to end their involvement in an interference. *See* 37 C.F.R. § 41.127(b) ("A party may at any time in the proceeding request judgment against itself.") Benson and Macrovision deliberately refrained from requesting adverse judgment and, instead, vigorously sought to deprive Intertrust of a patent.

35. At the time the '142 Interference was declared on September 4, 2003, the USPTO had deemed the claims of the Ginter '205 application allowable. But for the continuing assertion of the Benson I, II and III claims by Macrovision in the interference, Intertrust would have been granted a patent on the '205 application.

## Prayer for Relief

Wherefore, Plaintiff Intertrust prays that this Court:

A. Reverse the Board's judgment of December 28, 2005, incorporated into its Amended Judgment, against Ginter et al., including but not limited to, that: (1) the Kryptonite Demo fails as an actual reduction to practice; and (2) Ginter has not shown reasonable diligence during the critical period running from before Benson's February 1, 1995 benefit date to Ginter's February 13, 1995, benefit date.

B. Reverse all portions of the Board's judgment of December 28, 2005, incorporated into its Amended Judgment, and all underlying rulings with respect to the '142 Interference that are adverse to Ginter et al. including, but not limited to, those decisions listed in item A;

C. Reverse and vacate the Board's Amended Judgment awarding priority against Ginter et al. on the ground that as a consequence of Benson's inequitable conduct and unclean hands in procuring the Benson I patent and in prosecuting the Benson II and III applications before the USPTO, priority cannot be awarded for Benson and/or against Ginter as a matter of law;

D. Reverse and vacate the Board's Decision in Ginter's Motion for Reconsideration;

E. Adjudge that Karl L. Ginter, Victor H. Shear, Frances J. Spahn, and David M. Van Wie are the inventors of the inventions defined by Counts 1, 2, and 4, and are entitled to a Letters Patent of the United States for said invention;

F.  Authorize and/or direct the Under Secretary of Commerce for Intellectual Property and the Director of the USPTO to award priority as to the subject matter of Counts 1, 2, and 4 to Ginter and to issue a patent to Ginter on that subject matter as a consequence of Benson's inequitable conduct and/or Ginter's prior invention;

G.  As a consequence of Benson's inequitable conduct and/or pursuing the '142 Interference with unclean hands on the inequitably obtained and prosecuted claims in the Benson I patent and Benson II and III applications, declare this an exceptional case under 35 U.S.C. § 285 and award Intertrust its reasonable attorney fees expended herein and in the prosecution of the '142 Interference in the USPTO.

H.  Award Intertrust its costs pursuant to any appropriate provision of law; and

I.  Award Intertrust any other and further relief as this Court may deem just and proper.

### Demand for Jury Trial

Plaintiff demands a trial by jury on all matters properly tried by jury.

Dated: July 28, 2006

By: /s/ Linda J. Thayer
Linda J. Thayer
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, California 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorneys for Plaintiff,
INTERTRUST TECHNOLOGIES CORPORATION

8

COMPLAINT